UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| WILLIAM C. BLOOMQUIST, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 03-276-P-S |
| | ) | |
| JUSTICE PAMELA ALBEE, et al., | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTION
FOR SUMMARY JUDGMENT**

This is an action prosecuted by William Bloomquist proceeding pro se. A motion for summary judgment by WGME Inc., one of the many defendants called to answer Bloomquist's 631-paragraph, seventy-nine-page complaint, is pending (Docket No. 115) and it concerns the only remaining claim against it: Count Forty-One which charges WGME and others as having "conspired and acted with malicious specific intent to trespass on Plaintiff's property, privacy, and seclusion" and "unlawful entry upon Plaintiff's property, privacy, and seclusion" including inviting "other unknown persons who caused damage to Plaintiff's property." (Compl. ¶¶ 502, 503.) Bloomquist has filed pleadings in response. As Bloomquist has failed to generate a genuine dispute vis-à-vis the key material fact that the only thing that WGME did was broadcast a photo of the exterior of Bloomquist's home, a still shot that it received from a third-party, I recommend that the Court **GRANT** the motion for summary judgment.

*Summary Judgment Standard*

The defendant is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.   I review the record in the light most favorable to Bloomquist and I indulge all reasonable inferences in his favor. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir.2000) (emphasis added).

The fact that Bloomquist is a pro se plaintiff does not free him from the pleading burden set forth in Rule 56.  See Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y.2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment."); see also Sirois v. Prison Health Servs., 233 F.Supp.2d 52, 53-55 (D. Me. 2002).   While Bloomquist's complaint may be held to a less stringent pleading standard under Haines v. Kerner, 404 U.S. 519, 520 (1972), his pro se status does not shield him from Rule 56's operative provision under subsection(e) requiring the pleader to "set forth such facts as would be admissible in evidence."

*The Facts*

*WGME's Statement of Material Fact*

WGME[1] covered a news story relating to William Bloomquist. (Def.'s SMF ¶ 1.) The lead reporter assigned to the story, Crystal Canney, attended a press conference held by Cumberland County Sheriff Mark Dion. (Id. ¶ 2)  The Sheriff's Department displayed to WGME and the public Bloomquist's extensive arms collection and several marijuana plants identified as having been seized from his residence. (Id. ¶ 3.)  Neither Canney nor any member of the station's news staff entered on any property where Bloomquist resided on or after November 29, 2001. (Id. ¶ 4.) WGME aired a view of the exterior of a residence taken from a still photograph of Bloomquist's property. (Id.¶ 5.) The photograph was available from the Cumberland County Sheriff's Department, and is part of the Department's investigative file. (Id. )  WGME did not take that photograph. (Id. )  Bloomquist has not filed a responsive statement of material facts.

*Bloomquist's Statement of Material Fact*

Bloomquist has filed a separate statement of material fact and the defendant has filed a response.  On November 27, 2001, at 4:45 p.m. the Cumberland County Sheriff's Department Detective Kevin Joyce initiated a call for a weapons offense at Bloomquist's Baldwin residence. (Pl.'s SMF ¶ 1.) On November 27, 2001, at approximately 5:15 p.m. Bloomquist directly observed a long line of State Police, Cumberland County Sheriff Department, and Federal Agent vehicles going up the road to his then marital residence in Baldwin, Maine.  (Id. ¶ 2.) According to Maine Fish and Game Department's published Sunrise/Sunset Chart, sunset on November 28, 2001, occurred at 4:02 p.m. (Id. ¶ 3.)   At

---

[1]     The defendant states that it was mislabeled in the amended complaint as "WGME 13."

Bloomquist's residence members of the Cumberland County Sheriff Department illegally and unreasonably forced entry into Bloomquist's hidden arms room and removed eighty-one firearms and hundreds of related military items, which Sheriff Dion displayed to the media at 11:00 a.m. on November 28, 2001, at a press conference. (Id. ¶ 4.) On November 29, 2001, at approximately 6:10 p.m. Bloomquist was in the process of being released on bail when he observed from a distance of twenty-five feet a televised broadcast by a television station (Bloomquist does not assert that the station was actually this defendant's)[2] that depicted a close-up of Bloomquist's residence minus his American flag as well as a video of his personal gun collection. The video shot appeared to Bloomquist to have been taken in late afternoon. (Id. ¶ 5.)

In early June of 2002, Bloomquist received from Cumberland County a copy of the "crime scene photo log" consisting of a description and some copies of forty-five photos taken at Bloomquist's residence. The photo log by Detective Rhoad lists forty-five photos which all seem to be of the interior of Bloomquist's residence. There does not seem to be a listing of an outdoor photo of Bloomquist's residence in this log. (Id. ¶ 6.) On February 7, 2002, Bloomquist, accompanied by two attorneys, two certified police officers, as well as Attorney Douglas Hendrick's wife and his legal assistant, spent some six hours retrieving Bloomquist's personal weapons collection from the Cumberland County Sheriff's Department Evidence room. At the conclusion of loading all the vehicles with Bloomquist's personal weapons collection, Bloomquist and Attorney Hendrick were all shown the original case file by Detective Downs. There were no external pictures of Bloomquist's residence in the investigative file. (Id. ¶ 7.)

---

[2] Bloomquist has named as defendants several broadcast media outlets.

Cumberland County Main Radio Log Table Records indicate that the police convoy arrived at Bloomquist's residence on November 27, 2001, at 16:59 hours and departed at 01:47 hours on November 28, 2001. (Id.¶ 8.) Any photo taken prior to 1 p.m.[3] would not show Bloomquist's residence as he recalls it depicted on the televised broadcast that he first viewed on November 29, 2001, at approximately 6:10 p.m. (Id. ¶ 9.) The defendant qualifies this statement indicating that regardless of who took what photographs when, WGME did not take the photograph of Bloomquist's home which WGME aired. (Resp. SMF ¶ 9; Canney Aff. ¶ 9.)[4]

When Bloomquist returned to his residence shortly after being released on bail to retrieve his belongings, Bloomquist found that his large American flag had been taken down then put back up on only one grommet and not tied tightly or securely to the pole, which is not how Bloomquist left it. Bloomquist's practice is to properly use two grommets and to tightly and securely tie the flag rope to the flagpole. (Pl.'s SMF ¶ 12.)

On or about December 3, 2002, Bloomquist had WGME served with a state court subpoena for the video footage relevant to this motion. On December 5, 2002, WGME News Director David Kaplar sent Bloomquist a letter that states, in part, "The video you are requesting does not exist in our archives since we did not air anything that was videotaped at your home during that period of time." This statement, in Bloomquist's but not WGME's opinion, appears to contradict WGME's assertion that none of its employees were present on Bloomquist's property. (Id. ¶ 13; Def.'s SMF ¶ 13.)

---

[3] Bloomquist may have meant this to be 1:00 a.m.

[4] Bloomquist states that, according to police records, WGME TV's Crystal Cannery and others were present on Plaintiff's property on the night of November 27, 2001, at 22:20 hours and departed at 00:03 on November 28, 2001. (Pl.'s SMF ¶ 10.) Bloomquist also claims he "has valid reason to believe that Cannery interviewed one of his neighbors on the afternoon of November 28, 2001, or November 29, 2001. (Id. ¶ 11.) Bloomquist does not provide a record citation for these key assertions and none of his exhibits support them. He has not generated a genuine dispute as to this fact.

5

*Bloomquist's Argument as to Why the Defendant is Not Entitled to Summary Judgment*

In responding to the motion for summary judgment Bloomquist argues that airing the photo of the exterior of his residence that he had "privately occupied for purposes of privacy and seclusion is as much a physical intrusion as driving a busload of tourists onto Plaintiff's private, secluded property to view his residence." (Pl.'s Opp'n Mot. Summ. J. at 2.)  He states that even if the photo was taken by the Cumberland County Sheriff's Department "it was taken secretly for the exclusive purpose of having Defendant WGME 13 serve as Defendant Dion's agent for the invasion of Plaintiff's privacy and seclusion." (Id.)  He then argues:

> Plaintiff further alleges that the repeated video broadcast of Plaintiff's personal, private weapons collection, as well as the broadcast of intimate details of the location, description, and nature of Plaintiff's secret hidden arms room was and is a separate distinct invasion of Plaintiff's privacy and seclusion and as such "would be highly offensive to the ordinary reasonable man." Nelson v. Times 373 A.2d 1221, 1223. Plaintiff alleges that Defendant Sheriff Dion actively conspired with Defendant WGME 13 to parade Plaintiff's personal, private weapons for all the world to see on television. Plaintiff alleges that WGME 13 has a policy of encouraging police departments and Defendant Sheriff Dion to make unreasonable seizures of weapons and firearms in order to promote its ratings by repeatedly televising the seizures even when it is known in advance that the firearms are legal and lawfully possessed.
> Plaintiff also alleges that Defendant Sheriff Dion contacted Defendant WGME TV prior to the illegal entry and seizure of Plaintiff's private, secret, hidden weapons collection and that pursuant to their policies, WGME 13's agents told Defendant Sheriff Dion they would give him wide coverage if he could show them a "whole room full of confiscated military weapons." Plaintiff also alleges that Defendant Sheriff Dion was so motivated by the publicity promised to him by Defendant WGME 13 that he decided to seize Plaintiff's personal, private weapons collection even though his own officers at the scene told him that the police had no legal or public safety justification for the seizure of Plaintiff's personal, private weapons collection.
> Plaintiff alleges that in today's modern world, an electronic invasion of one's privacy and seclusion that is published on television

6

> constitutes just as much an invasion of privacy and seclusion as a physical intrusion.

(Id. at 2-3.)

### *Discussion*

In Nelson v. Maine Times the Maine Law Court explained:

> Restatement (Second), Torts [§] 652B provides:
>> 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'
>
> In [Estate of] Berthiaume [v. Pratt] we recognized that it is an actionable tort to make an unauthorized intrusion upon a person's physical or mental solitude or seclusion. This concept requires proof of an actual invasion of 'something secret, secluded or private pertaining to the plaintiff'. [] 365 A.2d [792] 795 [(Me. 1976)]. It is not alleged that Maine Times physically intruded upon the plaintiff's 'solitude or seclusion.'
>
> In Berthiaume the defendant made an uninvited entry into the hospital room of a dying person for the express purpose of taking unauthorized photographs, facts which are easily distinguishable from those now before us.
>
> As is made clear by the comments and illustrations in Restatement (Second) of Torts, at 378-80, a complaint should minimally allege a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion. See Froelich v. Werbin, 219 Kan. 461, 548 P.2d 482, 485 (1976). This complaint makes no such allegation.
>
> Additionally, there is no averment that the publication of the picture was at all offensive to the plaintiff, although this segment of the tort clearly requires proof that the invasion be highly offensive to the ordinary reasonable man. See Restatement, supra, comment d at 380.

373 A.2d 1221, 1223 (Me. 1977). The referenced comment and illustrations state:

> The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection. Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye. Even in a public place, however, there

>    may be some matters about the plaintiff, such as his underwear or lack of
>    it, that are not exhibited to the public gaze; and there may still be invasion
>    of privacy when there is intrusion upon these matters.
>
>    **Illustrations:**
>       6. A is drunk on the public street. B takes his photograph in that
>       condition. B has not invaded A's privacy.
>       7. A, a young woman, attends a "Fun House," a public place of
>       amusement where various tricks are played upon visitors. While she is
>       there a concealed jet of compressed air blows her skirts over her head,
>       and reveals her underwear. B takes a photograph of her in that
>       position. B has invaded A's privacy.

Rest.(2d) Torts § 652B Cmt. c, illus. 6 & 7.

Bloomquist has not generated a factual basis in support of the conclusion that the exterior of Bloomquist's house was a uniquely private concern to him and was so guarded that the exterior of the house was not open to view by a casual passer-by (or busload of tourists). The image of the exterior of one's house and your American flag, whether you live there with your spouse, your kids, a dog, or a nudist colony, is not alone something that would be "highly offensive to a reasonable person." I will not take Bloomquist up on his suggestion that I reject the Maine Law Court's limitation of the intrusion on seclusion tort because "in today's modern world, an electronic invasion of one's privacy and seclusion that is published on television constitutes just as much an invasion of privacy and seclusion as a physical intrusion."

With respect to his guns, Bloomquist has not attempted to create a genuine dispute of material fact as to the defendant's assertion all that was aired on its broadcast was "a view of the exterior of a residence taken from a still photograph." With respect to his American flag there is no factual basis or argument by Bloomquist vis-à-vis any claim that this defendant took any part in its alleged adjustment.

Bloomquist does cry "conspiracy" in his complaint and in his opposition to the motion for summary judgment. In his opposition memorandum he "alleges" that Dion contacted WGME prior to the illegal entry and seizure of Plaintiff's private, secret, hidden weapons collection and that pursuant to their policies, WGME 13's agents told Dion they would give him wide coverage if he could show them a "whole room full of confiscated military weapons." However, while this may be a perfect example of a well plead conspiracy count, see Adickes v. S. H. Kress & Co., 398 U.S. 144, 150-52 (1970) (holding that private parties, jointly engaged with state officials in unlawful conduct, are acting under "color of law" for purposes of 42 U.S.C.§ 1983, indicating that private and public parties must act with a common understanding or "meeting of the minds"); Pena-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004) (discussing pleading standard for 42 U.S. § 1983 conspiracy claims); (compare Docket Nos. 165 & 166)(recommended decisions on dispositive motions in this case concluding conspiracy was not adequately plead),[5] Bloomquist has not included factual statements supported by record evidence in

---

[5]    This illustrates why requiring factual allegations of what the conspiracy between the state actor and the private individual was factually, an element of the claim, is not the same as  "heightened pleading standard" apropos state of mind that the Supreme Court rejected in Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002). Contra See Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003) (stating that "requiring more than notice of the time, scope, and parties cannot be squared with Swierkiewicz and conspiracy's absence from the list in Rule 9(b)."); Walker v. Thompson, 288 F.3d 1005, 1007-08 (7th Cir. 2002); but see Collier v. Bankers Life & Cas. Co., No. 03-1181, 2003 WL 22435701, 1 (7th Cir. Oct. 20, 2003) ("We agree with the district court that Collier's generalized allegation of a conspiracy to deprive her of her civil rights is insufficient to survive dismissal: she is completely vague concerning the nature of the agreement and gives the defendants no information that would allow them to prepare a defense.") (unpublished opinion).

Bloomquist does not make this 'allegation' anywhere I can find in his 631-paragraph, seventy-nine-page complaint. With respect to Count Forty-One, Bloomquist "specifically" references paragraphs 37-57, 59-68, 70-79, and 87-171 of his complaint as the factual basis for this tort. (Am. Compl. ¶ 501.) The only mention of WGME that I can find in these paragraphs is in the fifty-sixth, which reads: "On November 28, 2001, all local television stations, including Defendants WGME 13, NBC 6, ABC 8, and FOX 51, with blatant disregard for the truth ran numerous televised news stories featuring Plaintiff and Plaintiff's weapons collection over the course of several days with follow-ups weeks later." (Am. Compl. ¶ 56.) Like so many of Bloomquist's 'pleadings' the 'allegation' of factual conspiracy only arose after this defendant filed its dispositive motion. Conspiracy allegations such as this are made in complaints. At the summary judgment stage a defendant is put to his/her/its proof.

9

support of his conspiracy theory.  Bloomquist does claim that he has not had an opportunity to conduct discovery on the facts relevant to this motion and asks for an "adequate opportunity to conduct discovery or otherwise develop evidence."  (Pl.'s Opp'n Mot Summ. J. at 1.)  However, Bloomquist has utterly failed to adequately support this request.  See Resolution Trust Corp. v. North Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir.1994) (explaining that in order for a litigant opposing summary judgment under Rule 56(f) to successfully defer disposition of an otherwise timely summary judgment motion, he or she must make a sufficient proffer explaining why he or she is unable to currently adduce the essential facts, how the "the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion," and why there is "a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist").

### *Conclusion*

For the above reasons I recommend that the Court **GRANT** this motion for summary judgment by WGME Inc. as to Count Forty-One of Bloomquist's complaint.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

> Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated March 29, 2005.