UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM C. BLOOMQUIST,   )<br>                                              )<br>            Plaintiff                  )<br>                                              )<br>v.                                           )   Civil No. 03-276-P-S<br>                                              )<br>JUSTICE PAMELA ALBEE, et al.,  )<br>                                              )<br>            Defendants            )| |

**RECOMMENDED DECISION ON MOTION
FOR JUDGMENT ON THE PLEADINGS**

Defendant Robert Ruffner is pressing a motion for judgment on the pleadings (Docket No. 132) apropos this multi-defendant, multi-count, multitudinous-paragraph complaint compiled by pro se plaintiff William Bloomquist. For the reasons stated below, I recommend that the Court deny the motion as to Counts Fourteen, Twenty-One, and Twenty-Two. But I do recommend that the Court grant Ruffner's motion as to Counts Thirteen, Fifteen, Sixteen, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, Fifty-One and, just to be on the safe side, all other counts in Bloomquist's complaint.

*The Counts against Ruffner*

It is not always easy to pinpoint which of Bloomquist's fifty-eight counts pertain to which defendant in ciphering Bloomquist's 631-paragraph, seventy-nine-page complaint. And I have missed the mark before in this case. (See Docket Nos. 114 & 124.) However with respect to Ruffner, Bloomquist, in responding to the present motion,

does not contest Ruffner's limitation of this action against him to the following ten 42

U.S.C. § 1983 federal and one state law counts:

> Count Thirteen: Unlawful interference with federal right to federal firearms dealer's license;
> Count Fourteen:  Conspiracy to violate Bloomquist's First Amendment rights in the bringing of fourteen unwarranted criminal charges against Bloomquist to chill his advocacy vis-à-vis Second Amendment issues and to prevent Bloomquist from bringing certain law suits that would place some defendants in a bad light;
> Count Fifteen:  Conspiracy to violate Bloomquist's First Amendment right to travel and assemblage in helping with the obtainment of a New Hampshire protection from stalking order;
> Count Sixteen: Conspiracy to violate Bloomquist's Second Amendment right to keep and bear arms in helping with the obtainment of a New Hampshire protection from stalking order;
> Count Twenty-One:  Conspiracy to violate Bloomquist's Fourth Amendment right by participating in a malicious prosecution of Bloomquist although there was no probable cause;
> Count Twenty-Two: Conspiracy to violate Bloomquist's Eighth Amendment right by imposition of unreasonable bail conditions;
> Count Twenty-Three:  Conspiracy to violate Bloomquist's Fourth Amendment right in the unreasonable seizure of the person by helping have him subject to an order to appear at the Northern Carroll County Courthouse due to the temporary New Hampshire protection from stalking order;
> Count Twenty-Four: Conspiracy to violate Plaintiff's Fourth Amendment right in the unreasonable seizure of property by helping have him subject to the temporary New Hampshire protection from stalking order which resulted in the seizure of his arms;
> Count Twenty-Five: Conspiracy to violate Bloomquist's Fourth Amendment right in the unreasonable seizure of the person by causing him to be seized by the unreasonable terms of the final New Hampshire protection from stalking order;
> Count Twenty-Six: Conspiracy to violate Bloomquist's Fourth Amendment right in the unreasonable seizure of property by causing his firearms to be seized by the unreasonable terms of the final New Hampshire protection from stalking order; and
> Count Fifty-One: A state law claim for defamation alleging that Ruffner made false and defamatory statements about Bloomquist to the Maine Board of Bar Overseers.

### *The Factual Allegations Pertaining to Ruffner*

Bloomquist also does not take issue with Ruffner's identification of the factual allegations pertinent to Ruffner. In November of 2001 Bloomquist became involved in a domestic dispute with, his then, wife, Katariina Pulkkinen. (Am. Compl. ¶¶ 41-43.) On November 27, 2001, the Cumberland County Sheriff's Department escorted Pulkkinen to the marital residence to help her retrieve some of her belongings and in order to serve Bloomquist with a protection from abuse order. (Id. ¶¶ 41-42, 44-46.) During that entry, the sheriff's department seized numerous firearms and other weapons belonging to Bloomquist. (Id. ¶¶ 52.)

Bloomquist alleges that on November 28, 2001, Defendant Ruffner met with, among others, various representatives of the Cumberland County District Attorney's Office and "sat down with malice to decide on how to charge Plaintiff based on the known fraudulent allegations that Plaintiff's estranged wife had made." (Id. ¶ 57.) Bloomquist alleges that during the November 28, 2001, meeting, Ruffner convinced Defendant Assistant District Attorney Berlind to charge Bloomquist with two additional counts of terrorizing involving Scott Floccher, a client of Ruffner's. (Id. ¶ 58.)

An aside is necessary here. I know from previous litigation instigated by Bloomquist that Scott Floccher is the former husband of Linda Gilbert. Gilbert retained the services of Bloomquist's employer, Attorney Charles Hendrick and Bloomquist worked on Gilbert's case as an investigator, paralegal, and legal assistant. See Bloomquist v. Town of Bridgton, 02-137-P-H, 2002 WL 31052490, *1 (D. Me. Sept. 11, 2002). At the time relevant to the events underlying that case, Scott Floccher and co-defendant

3

Susan Benfield cohabitated. Id. There were also custody issues pertaining to children in the Floccher/Benfield home. Id. The events underlying the previous suit turned,

> on the acrimonious relationship between Bloomquist, who resides in Maine, and Scott Floccher and Susan Benfield, who reside in New Hampshire. Bloomquist complains that Floccher and Benfield, along with various other private individuals and public employees, ha[d] violated his rights and injured him in a series of interactions. A key event underlying th[at] dispute [wa]s a hearing, apparently on Floccher's harassment complaint against Bloomquist, held in the Bridgton, Maine District Court on April 11, 2001, at which Bloomquist, his employer, attorney Douglas Hendrick, Floccher, and Benfield were present and during which violence erupted and Floccher allegedly assaulted Bloomquist.

Bloomquist v. Town of Bridgton, 02-137-P-H, 2003 WL 21250674, *1( May 16, D. Me. 2003).

In the present action Bloomquist asserts that Ruffner worked with Assistant District Attorney Berlind to intentionally and maliciously 'spin' Bloomquist's statements regarding his intent to use deadly force against Floccher if Bloomquist was again attacked by Floccher. (Id. ¶ 59).

On November 29, 2001, the State charged Bloomquist with multiple counts of assault and terrorizing. (Id. ¶¶57-59.) The criminal complaint included fourteen counts against Bloomquist, including a claim that Bloomquist communicated to Katariina Pulkkinen "a threat to commit or cause to be committed a crime of violence dangerous to human life, namely to kill Scott Floccher." On November 30, 2001, a bail hearing pertaining to the criminal charges occurred in Portland District Court. (Id. ¶67). Bloomquist alleges that at the bail hearing, Ruffner "represented the parental rights of Defendant Floccher and requested the Court place unreasonable and unwarranted restrictive bail conditions on Plaintiff of no contact with Kelsey or Kiley Floccher and no entering the residence." (Id. ¶ 67.) Bloomquist alleges that Ruffner "knew or should

4

have known from his prior representation of Defendant Floccher that his client had no standing to request these bail conditions. Additionally, these bail condition requests were in direct contrast to the known wishes of the children's mother, Linda Gilbert." (Id. ¶ 67.) On January 14, 2002, Bloomquist alleges that Benfield and Floccher "on the advice of their attorney, Defendant Attorney Ruffner" petitioned the Court in New Hampshire to grant Floccher and Benfield two temporary protection from stalking orders against Bloomquist. (Id. ¶ 77.)  The protection orders were granted. (Id.).

On April 19, 2002, Bloomquist alleges that "Defendant Attorney Ruffner intentionally and maliciously sent a defamatory letter to the Maine Bar Association in which he claimed that Plaintiff 'is currently charged in Cumberland County with threatening to kill Mr. Floccher.'" (Id. ¶ 117.)  Bloomquist asserts that Ruffner made a second false statement when he told the Bar Association that he had been Defendant Floccher's attorney at the time of an assault against Bloomquist that took place in the Bridgton District Court on April 11, 2002. (Id.) Attorney Ruffner was officially appointed to represent Defendant Floccher on June 25, 2002. (Id.)

### *Discussion*

### *The Federal Claims*

In the wake of Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002), to survive a motion to dismiss for failure to state a claim a 42 U.S.C. § 1983 complaint,

> need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). State of mind, including motive and intent, may be averred generally. Cf Fed.R.Civ.P. 9(b)(reiterating the usual rule that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally"). In civil rights actions, as in the mine-run of other cases for which no statute or Federal

> Rule of Civil Procedure provides for different treatment, a court confronted with a Rule 12(b)(6) motion "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 66 (1st Cir. 2004).

However, the First Circuit did not indicate that every pleading, even those utterly devoid of factual content, necessarily survives a motion seeking dismissal for failure to state a claim:

> From this we intuit that, in a civil rights action as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why--although why, when why means the actor's state of mind, can be averred generally. As we have said in a non-civil-rights context, the requirements of Rule 8(a)(2) are minimal--but "minimal requirements are not tantamount to nonexistent requirements." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988).
>     Second, in considering motions to dismiss courts should continue to "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir.1987) (citation and internal quotation marks omitted). Such eschewal is merely an application of Rule 8(a)(2), not a heightened pleading standard uniquely applicable to civil rights claims. See Correa-Martinez, 903 F.2d at 52-53 (treating the general no-bald-assertions standard and the heightened pleading standard for civil rights cases as two separate requirements); see also Higgs, 286 F.3d at 439 (rejecting the idea of "special pleading rules for prisoner civil rights cases," but nonetheless requiring complaints to meet some measure of specificity). As such, we have applied this language equally in all types of cases. See, e.g., Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir.2002) (holding plaintiff to this standard in a bankruptcy action); LaChapelle, 142 F.3d at 508 (holding plaintiff to this standard in an action alleging breach of contract and intentional infliction of emotional distress). We will continue to do so in the future.

Id. at 68.

"'An actionable section 1983 claim must allege facts sufficient to support a determination '"(i) that the conduct complained of has been committed under color of state law, and (ii) that [the alleged] conduct worked a denial of rights secured by the Constitution or laws of the United States."'" Romero-Barcelo v. Hernandez-Agosto, 75

6

F.3d 23, 32 (1st Cir. 1996) (quoting Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir.1992), quoting Chongris v. Board of Appeals, 811 F.2d 36, 40 (1st Cir.)).

Ruffner, a private attorney, was not a state actor during these events. See Polk County v. Dodson 454 U.S. 312, 325 (1981). Accordingly, to hold Ruffner liable on the § 1983 counts Bloomquist must demonstrate that he was acting under the "color of law" in a conspiracy with state actors. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 150-52 (1970) (holding that private parties, jointly engaged with state officials in unlawful conduct, are acting under "color of law" for purposes of 42 U.S.C.§ 1983, indicating that private and public parties must act with a common understanding or "meeting of the minds").

Unlike the conclusory conspiracy allegations apropos some defendants in this action, Bloomquist's allegations directed to conspiracy between Ruffner and state actors are not "wholly conclusory and inadequate." Pena-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004). Bloomquist alleges that Ruffner met with various representatives of the Cumberland County District Attorney's office and "sat down with malice" to decide on how to charge Bloomquist based on Bloomquist's (now-ex) wife's fraudulent allegations of abuse. He claims that Ruffner directed Assistant District Attorney Ann Berlind to charge Bloomquist with two additional charges of terrorizing his client Scott Floccher, working out with Berlind how to spin Bloomquist statements to justify intent-to-use-deadly-force charges in the future. He also alleges that at Bloomquist's bail hearing Ruffner represented the parental rights of his client Floccher and requested that

unreasonable and unwarranted bail conditions be placed on Bloomquist, conditions that Ruffner knew or should have known his client had no right to assert.

In this motion Ruffner asserts that these allegations are not sufficient to plead his involvement in a conspiracy.[1] I disagree in part. As pled it is possible to discern the 'what and when' of Ruffner's alleged conspiratorial action with respect to Ruffner's involvement with Berlind in drawing up the charging documents and participating in the bail hearing. These allegations are sufficient to save Counts Fourteen, Twenty-One, and Twenty-Two from disposition in Ruffner's favor in the context of a motion for judgment on the pleadings.

Regarding the remaining counts, which all turn on the New Hampshire stalking orders obtained by indisputably non-state-actors, Floccher and Benfield, Bloomquist's detailed complaint allegations do not allege a conspiracy between Ruffner and a state actor vis-à-vis securing these orders. Bloomquist alleges that Ruffner advised Floccher and Benfield to seek the protective order in New Hampshire. In his opposition to this motion Bloomquist claims he properly alleged that Floccher and Benfield sought stalking orders on the advice of Ruffner as part of a conspiracy to harm Bloomquist and that Ruffner provided these individuals with the charging sheet listing the fourteen criminal charges that Ruffner and Benfield cooperated in drafting. (Opp'n Mot. J. Pleadings at 7.)

In a prior recommended decision I have already concluded that the amended complaint does not state a claim against Assistant District Attorney Ann Berlind vis-à-vis the New Hampshire stalking orders. See Bloomquist v. Albee, Civ. No. 03-276, 2004 WL 2287758, *4 (D. Me. 2004) see id. at *4 n.4 ("The only allegation linking Berlind to

---

[1] Ruffner also complains that he was not present during the November 27, 2001, search and seizure. The counts I have identified as pertaining to Ruffner do not attempt to hold Ruffner liable for a Fourth Amendment violation on that day, however.

the New Hampshire order is that allegation mentioned above in which Bloomquist charges Berlind with misreading the legal effect of the New Hampshire order when she sought to prevent Bloomquist from getting his weapons back after the Maine charges were dropped."). Bloomquist did not challenge this particular conclusion in his objection to that decision. (See Docket No. 108.) Ruffner's alleged work with Berlind in framing this Maine charging sheet that Ruffner then unilaterally, allegedly, gave to Floccher and Benfield is an insufficient nexus as between Berlind and Ruffner to warrant the conspiracy claims against Ruffner apropos the New Hampshire stalking order counts.

In his opposition to Ruffner's present motion Bloomquist also claims that Ruffner provided co-defendant Detective Downs of the Cumberland County Sheriff's Office with information and copies of Bloomquist's Maine Board of Bar Overseers complaint against Ruffner "to encourage Downs to put this into evidence in New Hampshire the false story that Plaintiff was 'investigating' Defendant Floccher for filing a false financial affidavit." (Opp'n Mot. J. Pleadings at 7.) The only allegation in Bloomquist's complaint that I could locate on this score is Paragraph Eighty. Therein Bloomquist indicates that on January 14, 2002, New Hampshire Justice Albee wrote that (in the stalking proceedings) Benfield submitted documents including this Bloomquist affidavit to demonstrate that Bloomquist had spent a good deal of time following her about on the pretense of investigating Floccher.[2] There is no complaint allegation that I could locate that ties Downs to Ruffner.

---

[2] Bloomquist has submitted this affidavit in responding to Ruffner's motion. The first paragraph states:
> I am employed as a legal assistant and investigator for Douglas Hendrick, Esq. of Cornish, Maine and in this capacity I was doing research at the Superior Court in Portland on one Scott D. Floccher when I came across a State of Maine Indigency Affidavit, a copy of which is attached.

9

Once again, the only conspiracy alleged vis-à-vis Ruffner in these counts is with private parties and <u>not</u> State actors. Therefore, Counts Thirteen,[3] Fifteen, Sixteen, Twenty-Three, Twenty-Four, Twenty-Five, and Twenty-Six do not state actionable 42 U.S.C. § 1983 claims against this defendant.[4]

*The Defamation Count*

Bloomquist's defamation claim against Ruffner alleges that Ruffner made false and defamatory statements about Bloomquist to the Maine Board of Bar Overseers in defending charges brought by Bloomquist. In his efforts to have Ruffner's professional actions reviewed Bloomquist alleged that Ruffner presented Floccher's false financial affidavit to the court knowing that it was false in the hopes that he would be appointed as Floccher's attorney. Bloomquist believes that it was defamatory for Ruffner to tell the Board in a letter dated two days <u>after</u> the Maine criminal charges against Bloomquist were dropped that Bloomquist was "<u>currently</u> charged in Cumberland County with threatening to kill Mr. Floccher." (Opp'n Mot. J. Pleadings at 9-13; <u>see also</u> Am. Compl. ¶ 117) (emphasis added). It is Bloomquist's contention that this is more than a technical inaccuracy. (Opp'n Mot. J. Pleadings at 10.) He argues that defamation can be inferred from the "totality of the circumstances" and that Ruffner's statement was made in the hopes of impeaching Bloomquist's credibility in front of the Board. Bloomquist also

---

(Bloomquist Aff. ¶ 1.) The affidavit goes on to pick apart Floccher's representations about his financial wellbeing, with Bloomquist proffering investigatory counter-details about Floccher's income, belongings, and domestic arrangements.

[3] Bloomquist does allege that on November 28, 2001, Susan Benfield made phone calls to Detective Downs stating that Bloomquist had taken two children, Kelsey and Kiley Floccher, out in the woods and made them hold real guns. (Am. Compl. ¶ 62).

[4] With respect to Count Thirteen, and the alleged unlawful interference with Bloomquist's federal firearms dealer's license, the applicable paragraphs are 154, 155, 156, 157 and 171. It is Bloomquist's assertion that a New Hampshire county sheriff's department, a New Hampshire justice, and a New Hampshire court clerk falsely submitted information to the FBI to make it appear that Bloomquist was not permitted to have the federal license because the New Hampshire stalking order prohibited him from stalking an intimate partner or the child of an intimate partner (when in fact the orders pertained to stranger stalking).

claims that Ruffner's statement that he was representing Floccher at the time when Floccher assaulted Bloomquist in a Bridgton courtroom was defamatory of Bloomquist.

"An essential element of a claim for defamation is the existence of a false and defamatory statement concerning the plaintiff." McCullough v. Visiting Nurse Service of Southern Maine, Inc. 691 A.2d 1201, 1204 (Me. 1997) (citing Rippett v. Bemis, 672 A.2d 82, 86 (Me.1996)).  I agree with Ruffner that the Maine Law Court would view his first statement as "substantially true even though it may not be technically accurate" and the fact that Ruffner represented that Bloomquist was still charged was "no more damaging to [Bloomquist's] reputation than an accurate statement would have been, namely, that" the charges had been dropped two days prior.  Id.  Using Bloomquist's totality-of-the-circumstances defamation framework, Ruffner made these statements to the Board in the hopes of impeaching Bloomquist's credibility by demonstrating Bloomquist's motive in lodging the complaint against Ruffner.  Bloomquist's letter to the Chief Judge of the Maine District Court was penned on March 12, 2002, gauging by the date his accompanying affidavit was signed.[5]  The charges against Bloomquist were dropped on April 17, 2002, and Ruffner dated his letter April 19, 2002.  The fact that Bloomquist's charges were dropped in the interim between his letter and Ruffner's letter would not allow for any different inference to be drawn vis-à-vis Bloomquist's motive for bringing the charges against Ruffner.  I also agree with Ruffner that the second statement identified by Bloomquist – as to whether or nor Ruffner was representing Floccher at the Bridgton hearing when Floccher assaulted Bloomquist -- is not defamatory of

---

[5]  The cover letter for the affidavit, oddly, has the date of February 28, 2005, and is marked through.

Bloomquist.[6]

## *Conclusion*

For these reasons I recommend that the Court **DENY** Robert Ruffner's motion for summary judgment as to Counts Fourteen, Twenty-One, and Twenty-Two and **GRANT** it as to Counts Thirteen, Fifteen, Sixteen, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, Fifty-One (and all other counts in Bloomquist's complaint).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated April 1, 2005.

---

[6] I do not address Ruffner's claim that he is entitled to legal immunity for the statements made to the Board in his defense. If the Court rejects my recommendation on the defamation count it should address this assertion.