UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM C. BLOOMQUIST,         )<br>                                                     )<br>            Plaintiff             )<br>                                                     )<br>v.                                              )     Civil No. 03-276-P-S<br>                                                     )<br>JUSTICE PAMELA ALBEE, et al.,  )<br>                                                     )<br>            Defendants            ) | |

**RECOMMENDED DECISION ON MOTION
FOR SUMMARY JUDGMENT**

This is an action prosecuted by William Bloomquist proceeding pro se. A motion for summary judgment by WMTW-TV, one of the many defendants called to answer Bloomquist's 631-paragraph, seventy-nine-page complaint, is pending (Docket No. 117) and it concerns the only remaining claim against it: Count Forty-One which charges WMTW-TV and others as having "conspired and acted with malicious specific intent to trespass on Plaintiff's property, privacy, and seclusion" and "unlawful entry upon Plaintiff's property, privacy, and seclusion" including inviting "other unknown persons who caused damage to Plaintiff's property." (Compl. ¶¶ 502, 503.)  Bloomquist has filed pleadings in response. As Bloomquist has failed to generate a genuine dispute vis-à-vis the key material fact that the only thing that WMTW did was broadcast a photo of the exterior of Bloomquist's home, a still shot that it received from a third-party, I recommend that the Court **GRANT** the motion for summary judgment.

*Summary Judgment Standard*

The defendant is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.   I review the record in the light most favorable to Bloomquist and I indulge all reasonable inferences in his favor. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir.2000) (emphasis added).

The fact that Bloomquist is a pro se plaintiff does not free him from the pleading burden set forth in Rule 56.  See Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y.2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment."); see also Sirois v. Prison Health Servs., 233 F.Supp.2d 52, 53-55 (D. Me. 2002).   While Bloomquist's complaint may be held to a less stringent pleading standard under Haines v. Kerner, 404 U.S. 519, 520 (1972), his pro se status does not shield him from Rule 56's operative provision under subsection(e) requiring the pleader to "set forth such facts as would be admissible in evidence."

### *The Facts*

*WMTW's Statement of Fact*

WMTW covered a news story relating to William C. Bloomquist. (Def's SMF ¶ 1.) The lead reporter assigned to the story for WMTW, Bob Dyk, attended a press conference held by Cumberland County Sheriff Mark Dion. (Id. ¶ 2.) The Sheriff's Department displayed to WMTW and the public Bloomquist's extensive arms collection and several marijuana plants identified as having been seized from his residence. (Id. ¶ 3.) Neither Bob Dyk nor any member of the station's news staff entered on any property where Mr. Bloomquist resided on or after November 29, 2001. (Id. ¶ 4.) WMTW aired a view of the exterior of the Bloomquist residence taken from a still photograph of Bloomquist's property. (Id. ¶ 5.) The view was a camera shot of a still photograph. (Id.) The image of the exterior of the Bloomquist residence that WMTW aired is taken from the same still photograph that WGME used to obtain that same image. (Id. ¶ 6.) Both stations used the same still photograph to obtain the image. (Id.) The still photograph is part of the investigative file of the Cumberland County Sheriff's Department, which provided the photograph to broadcasters. (Id. ¶ 7.)

*Bloomquist's Statement of Fact*

On November 27, 2001, at 4:45 p.m. the Cumberland County Sheriff's Department Detective Kevin Joyce initiated a call for a "weapons offense" at Bloomquist's Baldwin residence. (Pl.'s SMF ¶ 1.) At approximately 5:15 p.m. Bloomquist directly observed a long line of State Police, Cumberland County Sheriff Department, and Federal Agent vehicles going up the road to his then marital residence.

(Id. ¶ 2.) According to Maine Fish and Game Department's published Sunrise/Sunset Chart, sunset on November 28, 2001, occurred at 4:02 p.m. (Id. ¶ 3.)

At Bloomquist's residence defendants of the Cumberland County Sheriff Department illegally and unreasonably forced entry into Bloomquist's hidden arms room and removed eighty-one firearms and hundreds of related military items, which Defendant Sheriff Dion displayed to the media at 11:00 a.m. on November 28, 2001, at a press conference. (Id. ¶ 4.)

On November 29, 2001, at approximately 6:10 p.m. Bloomquist was in the process of being released on bail when he observed from a distance of twenty-five feet a televised broadcast by one of the television station defendants that depicted a close up of Bloomquist's residence minus his American flag as well as a video of his personal gun collection. The video shot appeared to be taken in late afternoon. (Id. ¶ 5.)

In early June of 2002, Bloomquist received from Cumberland County a copy of the "crime scene photo log" consisting of a description and some copies of forty-five photos taken at Bloomquist's residence. There are no outdoor photos of Bloomquist's residence in this log. (Id. ¶ 6.).

On February 7, 2002, Bloomquist, accompanied by two attorneys, two certified police officers, an attorney's wife and his legal assistant, spent some six hours retrieving Bloomquist's personal weapons collection from the Cumberland County Sheriff's Department evidence room. After loading all the vehicles with Bloomquist's personal weapons collection, Bloomquist and Attorney Hendrick were shown the original case file by Defendant Detective Downs. There were no external pictures of Bloomquist's residence in the investigative file. (Id. ¶ 7.) Cumberland County Main Radio Log Table

records indicate that the police convoy arrived at Bloomquist's residence on November 27, 2001, at 16:59 hours and departed at 01:47 hours on November 28, 2001. (Id. ¶ 8.) Any photo taken prior to 1 p.m.[1] would not show Bloomquist's residence as he recalls it depicted on the televised broadcast that he first viewed on November 29, 2001. (Id. ¶ 9.)[2]

When Bloomquist returned to his residence shortly after being released on bail to retrieve his belongings with a certified police officer, Bloomquist found that his large American Flag had been taken down then put back up on only one grommet and not tied tightly or securely to the pole, which is not how he left it.  Bloomquist's practice is to properly use two grommets and to tightly and securely tie the flag rope to the flagpole. (Id. ¶ 12.)

The only qualification of Bloomquist's facts that defendant makes is that regardless of who took the photographs or when, WMTW did not take the photograph of Bloomquist's home that was aired. (Def.'s Response SMF ¶ 9.)

*Discussion*

In his memorandum in response to the defendant's motion Bloomquist states that there is a genuine dispute of material fact concerning whether or not the photo in question was part of the sheriff department's investigative file.  He also argues that even if the photo was taken by the sheriff's department it was "taken secretly for the exclusive purpose of having Defendant WMTW serve as Defendant Dion's agent for the invasion of Plaintiff's privacy and seclusion." (Pl.'s Opp'n Mot. Summ. J. at 2.)  He further asserts

---

[1] Bloomquist may have meant 1:00 a.m.
[2] Bloomquist states that, according to police records, WGME TV's Crystal Cannery and others were present on Plaintiff's property on the night of November 27, 2001, at 22:20 hours and departed at 00:03 on November 28, 2001. (Pl.'s SMF ¶ 10.)  He has no record support for this fact and this allegation pertains to a different defendant.

that the repeated video broadcast of his personal, private weapons collection and the "intimate details of the location, description, and nature" of his "secret hidden room" was a separate invasion of privacy. (Id.)  Apropos the weapons collection Bloomquist again asserts that Dion conspired with WMTW to "parade Plaintiff's personal, private weapons for all the world to see on television" and that WMTW has a policy of encouraging police departments to make unreasonable seizures of weapons and firearms in the hopes of elevating its ratings even when the police and station know in advance that the firearms are legally and lawfully possessed.  (Id. at 2-3.)  Bloomquist contends in this memorandum that Dion contacted WMTW prior to the entry and that WMTW promised to give Dion good coverage if Dion would show WMTW "the whole room of confiscated military weapons."  (Id. at 3.)

### *Discussion*

In Nelson v. Maine Times the Maine Law Court explained:

> Restatement (Second), Torts [§] 652B provides:
> > 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'
> 
> In [Estate of] Berthiaume [v. Pratt] we recognized that it is an actionable tort to make an unauthorized intrusion upon a person's physical or mental solitude or seclusion. This concept requires proof of an actual invasion of 'something secret, secluded or private pertaining to the plaintiff'. [] 365 A.2d [792] 795 [(Me. 1976)]. It is not alleged that Maine Times physically intruded upon the plaintiff's 'solitude or seclusion.'
> 
> In Berthiaume the defendant made an uninvited entry into the hospital room of a dying person for the express purpose of taking unauthorized photographs, facts which are easily distinguishable from those now before us.
> 
> As is made clear by the comments and illustrations in Restatement (Second) of Torts, at 378-80, a complaint should minimally allege a physical intrusion upon premises occupied privately by a plaintiff for purposes of seclusion. See Froelich v. Werbin, 219 Kan. 461, 548 P.2d 482, 485 (1976). This complaint makes no such allegation.

>Additionally, there is no averment that the publication of the picture was at all offensive to the plaintiff, although this segment of the tort clearly requires proof that the invasion be highly offensive to the ordinary reasonable man. See Restatement, supra, comment d at 380.

373 A.2d 1221, 1223 (Me. 1977). The referenced comment and illustrations state:

>The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection. Nor is there liability for observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye. Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters.
>
>**Illustrations:**
>    6. A is drunk on the public street. B takes his photograph in that condition. B has not invaded A's privacy.
>    7. A, a young woman, attends a "Fun House," a public place of amusement where various tricks are played upon visitors. While she is there a concealed jet of compressed air blows her skirts over her head, and reveals her underwear. B takes a photograph of her in that position. B has invaded A's privacy.

Rest.(2d) Torts § 652B Cmt. c, illus. 6 & 7.

Bloomquist has not generated a factual basis in support of the conclusion that the exterior of Bloomquist's house was a uniquely private concern to him and was so guarded that the exterior of the house was not open to view by a casual passer-by (or busload of tourists). The image of the exterior of one's house and your American flag, whether you live there with your spouse, your kids, a dog, or a nudist colony, is not alone something that would be "highly offensive to a reasonable person." I will not take Bloomquist up on his suggestion that I reject the Maine Law Court's limitation of the intrusion on seclusion

tort because "in today's modern world, an electronic invasion of one's privacy and seclusion that is published on television constitutes just as much an invasion of privacy and seclusion as a physical intrusion."

With respect to his guns, Bloomquist has not attempted to create a genuine dispute of material fact as to the defendant's assertion all that was aired on its broadcast was "a view of the exterior of a residence taken from a still photograph." Apropos Bloomquist's American flag there is no factual basis or argument by Bloomquist this defendant took a part in its alleged adjustment.

Bloomquist does cry "conspiracy" in his complaint and in his opposition to the motion for summary judgment. In his opposition memorandum he "alleges" that Dion contacted WMTW prior to the illegal entry and seizure of Plaintiff's private, secret, hidden weapons collection and that pursuant to their policies, WMTW's agents told Dion they would give him wide coverage if he could show them a "whole room full of confiscated military weapons." However, while this may be a perfect example of a well plead conspiracy count, see Adickes v. S. H. Kress & Co., 398 U.S. 144, 150-52 (1970) (holding that private parties, jointly engaged with state officials in unlawful conduct, are acting under "color of law" for purposes of 42 U.S.C.§ 1983, indicating that private and public parties must act with a common understanding or "meeting of the minds"); Pena-Borrero v. Estremeda, 365 F.3d 7, 11 (1st Cir. 2004) (discussing pleading standard for 42 U.S. § 1983 conspiracy claims); (compare Docket Nos. 165 & 166)(recommended decisions on dispositive motions in this case concluding conspiracy was not adequately plead),[3] Bloomquist has not included factual statements supported by record evidence in

---

[3] This illustrates why requiring factual allegations of what the conspiracy between the state actor and the private individual was factually, an element of the claim, is not the same as "heightened pleading

support of his conspiracy theory. Bloomquist does claim that he has not had an opportunity to conduct discovery on the facts relevant to this motion and asks for an "adequate opportunity to conduct discovery or otherwise develop evidence." (Pl.'s Opp'n Mot Summ. J. at 1.) However, Bloomquist has utterly failed to adequately support this request. See Resolution Trust Corp. v. North Bridge Assocs., Inc., 22 F.3d 1198, 1203 (1st Cir.1994) (explaining that in order for a litigant opposing summary judgment under Rule 56(f) to successfully defer disposition of an otherwise timely summary judgment motion, he or she must make a sufficient proffer explaining why he or she is unable to currently adduce the essential facts, how the "the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion," and why there is "a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist").

## *Conclusion*

For the above reasons I recommend that the Court **GRANT** this motion for summary judgment by WMTW-TV as to Count Forty-One of Bloomquist's complaint.

---

standard" apropos state of mind that the Supreme Court rejected in Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 (2002). Contra See Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003) (stating that "requiring more than notice of the time, scope, and parties cannot be squared with Swierkiewicz and conspiracy's absence from the list in Rule 9(b)."); Walker v. Thompson, 288 F.3d 1005, 1007-08 (7th Cir. 2002); but see Collier v. Bankers Life & Cas. Co., No. 03-1181, 2003 WL 22435701, 1 (7th Cir. Oct. 20, 2003) ("We agree with the district court that Collier's generalized allegation of a conspiracy to deprive her of her civil rights is insufficient to survive dismissal: she is completely vague concerning the nature of the agreement and gives the defendants no information that would allow them to prepare a defense.") (unpublished opinion).

Bloomquist does not make this 'allegation' anywhere I can find in his 631-paragraph, seventy-nine-page complaint. With respect to Count Forty-One, Bloomquist "specifically" references paragraphs 37-57, 59-68, 70-79, and 87-171 of his complaint as the factual basis for this tort. (Am. Compl. ¶ 501.) The only mention of WGME that I can find in these paragraphs is in the fifty-sixth, which reads: "On November 28, 2001, all local television stations, including Defendants WGME 13, NBC 6, ABC 8, and FOX 51, with blatant disregard for the truth ran numerous televised news stories featuring Plaintiff and Plaintiff's weapons collection over the course of several days with follow-ups weeks later." (Am. Compl. ¶ 56.) Like so many of Bloomquist's 'pleadings' the 'allegation' of factual conspiracy only arose after this defendant filed its dispositive motion. Conspiracy allegations such as this are made in complaints. At the summary judgment stage a defendant is put to his/her/its proof.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated April 1, 2005.