UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM C. BLOOMQUIST, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil No. 03-276-P-S |
| ) | |
| JUSTICE PAMELA ALBEE, et al., ) | |
| ) | |
| Defendants ) | |

**RECOMMENDED DECISION ON MOTION
FOR SUMMARY JUDGMENT**

The plaintiff William C. Bloomquist has moved for summary judgment against David Hench, Blethen Maine Newspapers, and Portland Press Herald. (Docket No.144.) While in his complaint Bloomquist alleges that various defendants defamed him in numerous ways, in this motion Bloomquist focuses on a discrete statement published by the defendants that he deems defamatory: "In his second year of law school, Bloomquist was offered an internship with the Cumberland County District Attorney's office, but the offer was rescinded following a background check with the Bridgton Police Department." The defendants have responded. I recommend that the Court **DENY** the motion for summary judgment because the best that can be said in Bloomquist's favor is that there is a genuine dispute of material fact as to whether or not this statement is defamatory.

*Discussion*

*Summary Judgment Standard*

Bloomquist is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

1

show that there is no genuine issue as to any material fact" and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id. I review the record in the light most favorable to the defendants and I indulge all reasonable inferences in their favor. See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir.2000) (emphasis added).

The fact that Bloomquist is a pro se plaintiff does not free him, as a movant, from the pleading burden set forth in Rule 56. See Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y.2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment."); see also Sirois v. Prison Health Servs., 233 F.Supp.2d 52, 53-55 (D. Me. 2002). While Bloomquist's complaint may be held to a less stringent pleading standard under Haines v. Kerner, 404 U.S. 519, 520 (1972), his pro se status does not shield him from Rule 56's operative provision under subsection(e) requiring the pleader to "set forth such facts as would be admissible in evidence."

*Defamation Standard*

Under Maine Law:

> Common law defamation consists of:
> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Lester v. Powers, 596 A.2d 65, 69 (Me.1991) (adopting Restatement (Second) of Torts § 558 (1977)).; accord Haworth v. Feigon, 623 A.2d 150, 156 (Me. 1993).

***Bloomquist's Statement of Material Fact***

On December 2, 2001, Bloomquist attended a meeting in Augusta with Attorneys Hendrick, Andrews, MacDonald, and Hedrick as well as others. (Pl.'s SMF ¶ 1.) At that meeting Bloomquist was shown for the first time a newspaper article written by Defendant David Hench and published by Blethen Maine Newspapers, Inc. on November 29, 2001, in the Portland Press Herald local and state edition and on the Press Herald Online Internet site. (Id. ¶ 2.) That article contained the statement: "In his second year of law school, Bloomquist was offered an internship with the Cumberland County District Attorney's office, but the offer was rescinded following a background check with the Bridgton Police Department." (Id. ¶ 3.)

In 1994 the Bridgton Chief of Police was willing to certify Bloomquist's eligibility for one (unspecified) firearm device. (See Docket Nos. 156, 167 & Attach. 1; Order Mot. Strike ¶ 4 Bloomquist Aff.)[1] Bloomquist has never been convicted of any misdemeanor or felony crime under the laws of Maine or any other state or foreign country, nor have any of his firearms permits, licenses, or federal dealers licenses been revoked or suspended. (Id. ¶ 5.) Bloomquist represents that any legal or court research performed today or in November of 2001 would confirm that Bloomquist has never been convicted of any misdemeanor or felony crime under the laws of Maine or any other state

---

[1] According to Bloomquist that statement is false, the Bridgton Police Department conducted no background check on Bloomquist, nor if they had conducted a background check would any negative information have surfaced. (Id. ¶ 4.) I have stricken Bloomquist's paragraph that asserts that there was no background check (of any kind) for the reasons stated in my order on the defendants' motion to strike it.

3

or foreign country. (Id. ¶ 6.) Although objecting to the lack of proper record citation to these statements of fact, [2] the defendants admit all of these assertions. (Defs.'s Resp. SMF ¶¶ 1,2,3,5,6.)

*Defendants' Additional Statement of Material Fact*

The November 29, 2001, article by Hench published in the Portland Press Herald reports that the criminal charges against Bloomquist are new, arising from investigation of a domestic abuse complaint by his (now former) wife, Katariina Pulkkinen, and a search of Bloomquist's home two days earlier. (Defs.' SAMF ¶ 1.) The article includes a statement by Bloomquist's lawyer that Bloomquist is "a licensed arms dealer" and there is "nothing illegal about the weapons." (Id. ¶ 2.) The article states that "if Bloomquist is convicted of felony assault he will lose his right to own a firearm." (Id. ¶ 3.) The article does not accuse Bloomquist of having been convicted of a crime. (Id. ¶ 4.)[3]

The defendants state that Bloomquist was offered an internship with the Cumberland County District Attorney's office (id. ¶ 6) and that the District Attorney did rescind the offer and terminate Bloomquist's internship (id. ¶ 7). Bloomquist qualifies this assertion, stating that the real and only reason that the offer was rescinded was actions taken by the University of Maine Law School. (Pl.'s Resp. Defs.' SAMF ¶ 7.)[4]

---

[2] The defendants object to all of Bloomquist's statements on the ground that they are unaccompanied by any record citations. However, Bloomquist's six-paragraph supporting affidavit does track the six statements of material facts and I am not inclined to be quite so draconian with Bloomquist's pro se pleadings as the defendants suggest I should or could be.

[3] Bloomquist argues that to the average reader the article fairly implies a criminal conviction, criminal history, or criminal background by the statement "the offer was rescinded following a background check with the Bridgton Police Department." (Pl.'s Resp. Def.'s SAMF ¶ 4.) This is not a factual dispute but an argument about the statement being defamatory.

[4] Bloomquist's record support for this assertion is Paragraph 15 of Bloomquist's Statement of Additional Facts, a non-cognizable pleading, submitted in reply to the defendants' response to his motion for summary judgment.

> The sole cause of Plaintiff's non-certification in May of 1997 was academic probation due to a low grade in a single course, not that Plaintiff was found somehow to be not of good moral character or competent legal ability. On May 30, 1997 Plaintiff

4

According to the defendants, the Bridgton Police Department reported information to the district attorney's office on Bloomquist. (Defs.' SAMF ¶ 8.)[5] That information was, the defendants assert, negative in nature; it was that Bloomquist was very knowledgeable about the trade in illegal narcotics in the Bridgton area, and that he was sharing information on the drug trade with the police. (Id. ¶ 9.) Bloomquist concedes that the Bridgton police department did speak informally with assistant district attorney Christine Thibeault and Berlind, (Pl.'s Resp. Defs.' SAMF ¶ 8), but argues that there is nothing negative about being very knowledgeable about the drug trade and sharing that information with the local police. (Id. ¶ 9.)[6]

The defendants contend that Bloomquist admitted to his wife that the "Bridgton Police told the DA's office that he was a convicted felon." (Id. ¶ 10; Berlind Aff. ¶ 15; id. Ex. B. at 2.)[7] Bloomquist responds that his ex-wife admitted to others that she had

---

made telephone calls to Defendant Anderson and Defendant Berlind of the Cumberland County District Attorney's Office and to Dean Zillman of the University of Maine School of Law, which all confirm that the sole issue of Plaintiff's non-certification was academic standing. Subsequent letters sent out by Defendants Anderson and Berlind, as well as Dean Zillman and Assistant Dean Guaditz all confirm that academic probation was the sole reason for Plaintiff's temporary non-certification.

(Pl.'s SAMF ¶ 15, Docket No. 175, Attach. 1.) Bloomquist cites to his affidavit filed with that pleading and a paragraph that asserts that the sole cause of his noncertification in May of 1997 was academic probation due to a low grade in a single course and not a want of moral character or legal ability. (Bloomquist Aff. ¶ 15.) He then cites to exhibits that he filed with yet another pleading, his motion to strike the affidavit of Ann Berlind. (Docket No. 174.)

For their part, the defendants assert that according to the District Attorney, Bloomquist's internship offer was terminated because he was not certified as being of good character and competent legal ability. (Defs.' SMF ¶ 12.) However, the defendants offer no record citation in support of this factual statement, as Bloomquist notes. (Pl.'s Resp. Defs.'s SAMF ¶ 12.)

[5] In a motion to amend the Berlind affidavit Berlind explains that she now recollects that Thibeault first received unsolicited information from the Bridgton Police Department and that Berlind thereafter contacted the officer who had contacted Thibeault. (Mot. Am. Berlind Aff. at 2.) In a separate order I have granted this unopposed motion to amend. Even if I had not, there is no genuine dispute that the Bridgton Police contacted someone at the District Attorney's office and that the District Attorney's office made a responsive contact and that the Bridgton Police imparted some information to the District Attorney's office.

[6] Bloomquist also asserts that the information is hearsay because defendant Hench has no personal information of what the Bridgton Police Department told the Cumberland County District Attorney's Office. However, the record support for the defendants' statement is the Affidavit of Ann Berlind.

[7] Bloomquist denies this assertion by stating that the statement is hearsay and noting that he is moving to strike Exhibit B in its entirety, which is a November 28, 2004, letter from his now ex-wife about

5

made false statements and admitted in a letter to Berlind that her statements were not accurate. (Pl.'s Resp. Defs.' SAMF ¶ 10.) He points to Paragraphs 9, 9(a), and 9(b) and Exhibit C of his motion to strike the Berlind Affidavit which are statements made in a March 29, 2002, letter from Pulkkinen to Berlind explaining her reasons for asking that Berlind dismiss the charges against Bloomquist. (See Docket No. 174.) However, this May 29, 2002, letter was well after the information gathering by these defendants.[8]

According to the defendants, Hench did have a reliable law enforcement source for the statement in the article concerning Bloomquist's internship. (Defs.' SAMF ¶ 11.) In the affidavit paragraph Hench relies on for this assertion, he asseverates: "Although I now lack specific recall of who my source was in November, 2001, the statements by Anne M. Berlind in her affidavit of March 10, 2005 lead me to believe my source must have been in the Cumberland County Sheriff's Department or the Cumberland County District Attorney's Office." (Hench Aff. ¶ 10, Docket No. 162.)[9]

### *Disposition*

The defendants argue that in addition to the failure to provide proper record support for his statement of fact, Bloomquist cannot hold them liable for a statement – that Bloomquist had been convicted of a crime -- that the defendants did not report and that even if this statement is capable of the defamatory meaning it remains for the fact-finder to determine if the statement was understood as such. I agree with the defendants

---

her relationship with Bloomquist. However, the Berlind affidavit authenticates the document. In a separate order I have denied Bloomquist's motion to strike certain paragraphs and the exhibits to the Berlind affidavit.

[8] I also do not read the letter as admitting the falsity of her charges preceding the events in question.
[9] Bloomquist retorts that Hench's inability or unwillingness in this affidavit, to divulge his source casts doubt on the reliability of the source. (Pl.'s Resp. Defs.' SAMF ¶ 11.) He also asserts that Hench failed to identify or acknowledge this source in his first affidavit (but does not bother to cite to where this first affidavit is to be found in this sprawling docket). (Id.) In resolving a motion by Bloomquist for summary judgment such an inference is not to be drawn in Bloomquist's favor.

that, <u>on this record</u>, there remains a genuine dispute of fact on the question of whether this statement is defamatory.

The defendants also argue that the motion for summary judgment should be denied because the statement is substantially true. In this bout of pleadings the defendants have not cross-moved for summary judgment on this argument. However, I stress that a conclusion that Bloomquist has not carried his summary judgment burden apropos his motion does not foreclose the defendants from obtaining summary judgment vis-à-vis this statement in their motion for summary judgment if they succeed in convincing the court that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law.

*Conclusion*

For these reasons I recommend that the Court **DENY** Bloomquist's motion for summary judgment. (Docket No. 144.)

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated April 22, 2005.