UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| WILLIAM C. BLOOMQUIST, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil No. 03-276-P-S |
| ) | |
| JUSTICE PAMELA ALBEE, et al., ) | |
| ) | |
| Defendants ) | |

**RECOMMENDED DECISION ON WILLIAM BARRY'S
MOTION FOR SUMMARY JUDGMENT (Docket No. 232)**

William Barry, an Assistant District Attorney for Cumberland County, moves for summary judgment (Docket No. 232) on the one remaining count against him – Count 52 charging Barry with defamation-- in this civil rights action filed by William Bloomquist. I recommend that the Court grant Barry's motion for the reasons that follow.

*Summary Judgment Standard*

Barry is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id. I review the record in the light most favorable to Bloomquist and I indulge all reasonable inferences in

his favor.  See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir.2000) (emphasis added).

The fact that Bloomquist is a pro se plaintiff does not free him from the pleading burden set forth in Rule 56.  See Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y.2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment."); see also Sirois v. Prison Health Servs., 233 F.Supp.2d 52, 53-55 (D. Me. 2002).  While Bloomquist's complaint may be held to a less stringent pleading standard under Haines v. Kerner, 404 U.S. 519, 520 (1972), his pro se status does not shield him from Rule 56's operative provision under subsection (e) requiring the pleader to "set forth such facts as would be admissible in evidence."

Bloomquist has already faced multiple motions for summary judgment in this case and he is familiar with the local rules governing summary judgment pleadings. Subsection (c) of the District of Maine Local Rule provides:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

Subsection (e) directs:

> Statement of Facts Deemed Admitted Unless Properly Controverted; Specific Record of Citations Required
> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed

> admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Dist. Me. Loc. R. 56(e).

### *Defamation Standard*

To establish this defamation claim, Bloomquist must demonstrate: One, that Barry made a false and defamatory statement about him; two, the statement was an unprivileged publication to a third party; three, Barry was at a minimum negligent in making the statement; and, four, the publication caused Bloomquist special harm or the statement was such that special harm need not be shown. See Schoff v. York County, 2000 ME 205, ¶ 7, 761 A.2d 869, 871.

Bloomquist contends that there is admissible evidence that Barry told someone that Bloomquist had "in fact" sexually assaulted a woman named Patrice Gibbons, vis-à-vis an investigation into bondage pictures of Gibbons that had been in Bloomquist's possession and turned over the authorities. (Pl.'s Opp'n Mot. Summ. J. at 1.)  In defending Barry's motion Bloomquist cites to the following statement of additional fact:

> During the time period of October 2002, even Defendant Down had told Plaintiff's Attorney, Jodi Nofsinger, that "there was no investigation, were no charges, and that this matter had been resolved many months ago." Defendant Down and Defendant B[a]rry, through their attorneys, continued to claim that there was no paperwork for the so-called sexual assault investigation and Plaintiff did not receive the attached final disposition form and reports of investigation until August 5, 2005. On November 26, 2001 it was Ms. Pulkkinen's attorney, Judith Wohl, whom called the Cumberland County Sheriff's Department (CCSO), not Plaintiff's ex-wife.

3

(Bloomquist SAMF ¶ 16.) In support of this statement Bloomquist cites to an October 1, 2002, letter to Detective Down from his attorney which is Exhibit K of his own motion for summary judgment. In that letter Bloomquist's attorney writes in part: "Will Barry told me that these photographs would not be returned because there is a pending investigation against Mr. Bloomquist for sexual assault involving this woman." (Docket No. 264, Ex. K.) Bloomquist contends that that statement "was clear indication that Defendant B[a]rry intended to convey to Plaintiff's attorney and others that Plaintiff had in fact sexually assaulted that woman." (Pl.'s Opp'n Mot. Summ. J. at 1.) With respect to the quoted language in Paragraph 16 of his statement of additional fact -- "there was no investigation, were no charges, and that this matter had been resolved many months ago" – this quote appears nowhere in the three letters marked as Exhibit K.

### *Barry's Facts Material to Bloomquist's Defamation Claim*[1]

On or about November 26, 2001, seven photographs of a nude woman depicted in bondage that were in Bloomquist's possession were turned over to the Cumberland County Sheriff's Department. (Barry SMF ¶ 18; Bloomquist Resp. SMF ¶ 18.) Bloomquist has claimed that the photographs were part of an estate for which he acted as the personal representative. (Barry SMF ¶ 19; Bloomquist Resp. SMF ¶ 19.)

According to Barry, in August and September of 2002, Detective Down of the Sheriff's Department told Barry that he was investigating the matter involving the photographs of the nude woman. (Barry SMF ¶ 20; Barry Aff. ¶¶ 12, 17; Down Aff. ¶¶ 18, 19.) The Sheriff's Department did investigate the matter involving the photographs. (Barry Aff. ¶ 21; Down Aff. ¶¶ 17, 19.) This investigation by the Sheriff's Department

---

[1] Barry, in his statement of fact, and Bloomquist, in his statement of additional facts, have each propounded many more factual statements. I have attached a compilation of these facts noting meaningful admissions, qualifications, or denials, as an appendix to this opinion.

4

was still open as of September 2002. (Barry SMF ¶ 22; Down. Aff. ¶ 19.) As part of his investigation into the photographs of the nude woman in bondage, Detective Down spoke with the woman in the photographs. (Barry SMF ¶ 23; Down Aff. ¶ 17.) Ultimately, the Sheriff's Department decided not to bring criminal charges against anyone in connection with the bondage photographs. (Barry SMF ¶ 24; Det. Down. Aff. ¶ 21.)

On January 16, 2002, Bloomquist was charged with one count of cultivating more than five but fewer than one-hundred marijuana plants. (Barry SMF ¶11; Bloomquist Resp. SMF ¶ 11.) ADA Barry had primary responsibilities for the marijuana cultivation charges against Bloomquist. (Barry SMF ¶ 12; ADA Barry Aff. ¶ 8; Bloomquist Resp. SMF ¶ 12.)[2] In February 2002, Attorney Jodi Nofsinger replaced Robert Andrews, Esq., as counsel for Bloomquist in the marijuana-cultivation case. (Barry SMF ¶ 13; Bloomquist Resp. SMF ¶ 13.) By an order dated August 6, 2002, the Maine District Court granted Bloomquist's motion to suppress the marijuana plants that had been seized by the Sheriff's Department in late November 2001, ruling that Bloomquist's wife did not have authority to give consent to the Sheriff's Department to search two rooms in the basement of the marital home, where the marijuana plants were found. (Barry SMF ¶ 14; Bloomquist Resp. SMF ¶ 14.) The hearing on Bloomquist's motion to suppress was held on July 10, 2002. (Barry SMF ¶ 15; Bloomquist Resp. SMF ¶ 15.) The State did not appeal the ruling granting Bloomquist's motion to suppress. (Barry SMF ¶ 16; Bloomquist Resp. SMF ¶ 16.) On September 11, 2002, the State dismissed the marijuana-cultivation charge against Bloomquist. (Barry SMF ¶ 17; Bloomquist Resp. SMF ¶ 17.)

---

[2] Bloomquist attempts to qualify this assertion by stating – without referencing any record support (not even his own affidavit) – how it appeared to him that Berlind was "removed from the case and substituted with Defendant Will Berry [sic]." (Bloomquist Resp. SMF ¶ 12.)

5

In July or August 2002, Attorney Nofsinger asked Barry whether the Sheriff's Office would return certain property taken from Bloomquist, including the photographs of the nude woman in bondage. (Barry Aff. ¶ 25; Barry Aff. ¶ 11; Bloomquist Resp. SMF ¶ 25.) In response to Attorney Nofsinger's request, Barry inquired of the Sheriff's Department, was told that the Sheriff's Department's investigation involving the photographs was still open, and was further informed that the Sheriff's Department was not in a position to return the photos at that time. (Barry SMF ¶ 26; Barry Aff. ¶ 12).

Bloomquist takes issue with these statements. He contends that the investigation was open and closed December 20 and 21, 2001, and Bloomquist was never a suspect. (Bloomquist Resp. SMF ¶¶ 20, 26.) Bloomquist points to an incident report dated December 21, 2001, closing an unlawful sexual contact case against a third party, James Osadnick, described as deceased. This form had a narrative by Detective Down in which he describes how a woman appearing in one or more pictures, Patrice Gibbons, indicates that she understood that the contact pertaining to her occurred at Gibbons's former boyfriend, James Osadnick's house and that no other individuals were involved. (Docket No. 264, Ex. C.) This report also explains that Gibbons had met Bloomquist but that Osadnick was alone with her in the house when she was drugged and alone with her when she awoke a few days later with black and blue buttocks. (Id.) Gibbons did not desire further investigation. (Id.) Bloomquist believes that this exhibit clearly demonstrates that the investigation was not still open in December 2001. (Bloomquist Resp. SMF ¶ 22; Docket No. 264, Ex. C.) Bloomquist also directs the court to an October 1, 2002, letter from Bloomquist's attorney to Detective Down seeking clarification as to whether Bloomquist was under investigation for sexual assault vis-à-vis

the pictures.  (Id. Ex. K.)  He includes an October 15, 2002, letter from his attorney to ADA Barry in which the attorney indicates that she had spoken to Detective Down who had indicated that there was no pending investigation, states that the photographs were taken pursuant to an illegal search of Bloomquist's weapon's room, and requests their return.  (Id.)  Bloomquist disputes the claim that the Sheriff Department made the decision not to press charges; Bloomquist urges that the "so called victim" – who never charged Bloomquist with participating in the conduct – requested that no further investigation be undertaken. (Bloomquist Resp. SMF ¶¶ 24, 26.)

There is no dispute that in a letter dated August 16, 2002, Barry relayed this information to Bloomquist's attorney and told her that the photos were part of an investigation and the property of the Cumberland County Sheriff's Office.  (Barry SMF ¶ 27; Bloomquist Resp. SMF ¶ 27.)  By letter dated August 21, 2002, Bloomquist's attorney pressed ADA Barry for the return of certain items, including the photographs of Gibbons in bondage. (Barry SMF ¶ 28; Bloomquist Resp. SMF ¶ 28.)  Bloomquist's attorney sent another letter to Barry dated September 11, 2002, to follow-up on her August 21 request for the photographs. (Barry SMF ¶ 29; Bloomquist Resp. SMF ¶ 29.)  By letter dated September 13, 2002, Barry responded, reiterating that Detective Down had told him the photographs of the nude woman in bondage were "evidence of a possible crime and will not be returned." (Barry SMF ¶ 30; Barry Aff. ¶ 17.)[3]  In the same letter Barry also told Nofsinger that the State was not appealing the order suppressing marijuana plants and that the State had dismissed the marijuana cultivations charges against Bloomquist. (Barry SMF ¶ 31.)

---

[3]  Bloomquist complains that Barry has no evidence that the statement in this letter came from Detective Down.  (Bloomquist Resp. SMF ¶ 30.)

On October 1, 2002, Bloomquist's attorney wrote directly to Detective Down, seeking the return of the photographs. (Barry SMF ¶ 32; Bloomquist Resp. SMF ¶ 32.) Bloomquist's attorney then wrote to Barry on October 15, 2002, making her case, again, that these photographs should be returned to Bloomquist. (Barry SMF ¶ 33; Bloomquist Resp. SMF ¶ 33.) The photographs were ultimately returned to Bloomquist's attorney by the Sheriff's Department in December 2002. (Barry SMF ¶ 34; Bloomquist Resp. SMF ¶ 34.)

In Count 52 of the Amended Complaint in this case, Bloomquist alleges that Barry "did defame Plaintiff by intentionally, falsely, and maliciously communicating to Plaintiff's Attorney, Jody Nofzinger, Esq., as well as others that Plaintiff was the subject of a sexual assault investigation." (Barry SMF ¶ 35; Am. Compl. ¶¶ 120, 576-582.)[4]

### *Bloomquist's Additional Facts Pertaining to the Sexual Assault Investigation into the Bondage Pictures*

According to Bloomquist, on November 27, 2001, there was no existing or ongoing sexual assault investigation. He notes that Detective Down filled out a incident report on December 20, 2001, and a final disposition form indicating that the Patrice Gibbons unlawful sexual contact offense was "cleared exceptionally" by Down and his supervisor on December 21, 2001, as the "suspect committed suicide two years ago." On December 20, 2001, at approximately 2:00 p.m. Patrice Gibbons wrote a statement to Down which concludes: "I am requesting that no further investigation or charges be placed about these pictures that I am in." On December 20, 2001, Down did ask Patrice Gibbons to write a statement. In Down's narrative he states, "While she wrote I asked if

---

[4] This paragraph of the amended complaint states that the defamation occurred on June 6, 2002. Bloomquist responds that this was the date on which he first had confirmation of Barry's defamation of him by claiming that Bloomquist was subject to a pending sexual assault investigation. (Bloomquist Resp. SMF ¶ 35.)

8

she needed any further investigation about the pictures and she said no. I asked that she include that in her written statement." (Bloomquist SAMF ¶ 10 & Ex. B & C.)[5] Bloomquist also complains that Down waited twenty-five days from the time that Pulkkinen and her attorney delivered the photos to Down before Down contacted Patrice Gibbons. (Bloomquist SAMF ¶ 14 & Exs. B & C.) On February 7, 2002, after Bloomquist had recovered the majority of his unlawfully seized weapons and equipment, Bloomquist asserts that Down made statements to Bloomquist to the effect that he had run into Patrice Gibbons and that: she had only met Bloomquist once; Bloomquist had never been intimate with her; Bloomquist had not taken the pictures; was not present when the pictures were taken; and that there had not been any sexual assault associated with the photos incidents. (Bloomquist SAMF ¶ 11; Bloomquist Aff. ¶ 11.) The defendants object that the affidavit support for this statement is hearsay but admit the facts. (DA Defs.' Resp. Bloomquist SAMF ¶ 11.)[6]

According to Down, he investigated whether the woman in the photographs had been sexually assaulted by anyone (not just the deceased). (DA Defs' Resp. Bloomquist SAMF ¶ 10; Down July 13, 2005, Aff. ¶ 17.) He indicates that as late as August or September 2002 Down did not want to turn over the photographs to Bloomquist who was requesting them because there was still an open investigation and the photographs were

---

[5] This statement tracks Paragraph 6 of Bloomquist's Affidavit and Bloomquist cites to Paragraph 6 of his affidavit to support the statement but Bloomquist's affidavit is not proper support for these assertions. See Fed. R. Civ. P. 56(e). Bloomquist does not have evidentiary support for the contention that the defendants never had any good faith belief that Bloomquist had been or was a suspect in any sexual assault. I come to the same conclusion as to his statement: "Bloomquist was never a/the suspect. This investigation was never in any form or manner brought before or officially to the attention of the District Attorneys Office."

[6] Bloomquist asserts that Barry never received any paperwork, never received any request for assistance in investigation, never received any request for prosecution because this "sexual assault" case was disposed of and cleared exceptionally the day after Defendant Down interviewed Patrice Gibbons. (Bloomquist SAMF ¶ 12) However, his record support for this assertion does not support this statement (See Docket No. 264, Exs. B & C.)

9

possible evidence of a crime. (Down July 13, 2005, Aff. ¶ 19) He clarifies that in the time period between 2001 and 2002 he used the term "cleared exceptionally" to mean that the investigation was inactive but still open. It was not intended to indicate that the investigation was closed. (Down Sept. 7, 2005, Aff. ¶ 13.)[7]

On November 27, 2001, Bloomquist believes that Down told the ATF that Bloomquist was the suspect in a local sexual assault investigation when no investigation had begun and when there was not any probable cause to believe an investigation was warranted or that a sexual assault had occurred or that, if one had occurred, Bloomquist was the suspect. (Bloomquist SAMF ¶ 38; Docket No. 264, Exs. B & C.)[8] An ATF report of investigation, dated November 29, 2001, does indicate in the synopsis: "On November 27, 2001, ATF assistance was requested concerning an FFL who was alleged to be in possession of approximately one hundred firearms, a tank, marijuana, and five marijuana plants. This individual was the subject of a state Protection from abuse order and was a suspect in a local sexual assault investigation." (Docket No. 264, Ex. B at 1.) However, in this report there is no indication of who the source of this information was; there is nothing in this record that supports an inference that Barry was the source of the ATF report.

---

[7] According to Bloomquist, Down and Barry had no good faith basis to believe at any time that their statements that Bloomquist was the suspect in a local sexual assault investigation were valid or were even reasonable because when these statements were made there was no existing investigation or probable cause that a crime had occurred. Furthermore, he contends, the brief investigation that later did take place never involved Bloomquist as a suspect. (Bloomquist SAMF ¶ 13.) However, his record evidence in support of this assertion is this report by Down and three letters from his attorney (two in October 2001, one in December 2001) seeking the return of the pictures. (Id. Exs. C & K.) Similarly, Bloomquist argues that Barry had no good faith basis to believe that when he told Attorney Jodi Nofsinger that "[Bloomquist] was the suspect in a pending sexual assault investigation" that it was accurate or true. (Bloomquist SAMF ¶ 15 & Ex. K.) Bloomquist's attorney's advocacy on his behalf does nothing to establish the information possessed by Down or Barry or their states of mind.

[8] One of the exhibits Bloomquist cites is his Exhibit 10. This is the three-paged ATF exhibit and I can find no reference to a sexual assault investigation therein.

Bloomquist believes the alleged sexual assault investigation was limited to a third party, James Osadnick. He believes that the investigation occurred on December 20, 2001, and was closed on December 21, 2001. Bloomquist writes "It was 'closed exceptionally because the **ONLY SUSPECT**, one James Osadnick, had committed suicide two years earlier.' Emphasis added. Bloomquist was never a suspect." (Bloomquist SAMF ¶ 39.) Although Bloomquist indicates that he is quoting, with emphasis, his Exhibit C, the Final Disposition Form reads: "Disposition of Case: Case cleared exceptionally 12/21/01, suspect committed suicide two years ago." (Id. Ex. C.) The accompanying Maine Incident Report has identified Osadnick as a suspect/subject.

The defendant notes that it was during his initial November 26, 2001, meeting with Pulkkinen that she turned over the pictures of the nude woman in bondage, photos that had been in Bloomquist's possession. (Down July 13, 2005, Aff. ¶ 5.) Down did not speak with the woman in the photos until December 2001. (Id. ¶ 17.) Apparently asserting that James Osadnick -- the subject of the December 20, 2001, "cleared exceptionally" report (Docket No. 264, Ex. C) -- was not the only person under investigation concerning the picture, Barry notes that the investigation stayed open until the fall of 2002. (Down July 13, 2005, Aff. ¶¶ 18-21.) He reiterates that during the period between 2001 and 2002 Down used the term "cleared exceptionally" to indicate that the investigation was inactive but still open, not to indicate that it was closed. (Down Aug. 7, 2005, Aff. ¶13.)

## *Discussion*

I have substantial doubts that Barry's statement about the photographs and the criminal investigation could possibly be construed as false and defamatory. I would have

11

serious qualms denying Barry summary judgment by drawing an inference that Barry conveyed to Nofsinger that Bloomquist had "in fact" sexually assaulted Gibbons. There is absolutely no record support for the proposition that Barry conveyed anything about an investigation of Bloomquist for sexual assault "to others."

In any event, I agree with Barry that this statement in the letter to Nofsinger was privileged as a matter of Maine law. Under Restatement (Second) of Torts § 586:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

Restatement (Second) of Torts § 586. The Maine Law Court has generally recognized the privileges in the Restatement (Second) of Torts §§ 582-598A. See Saunders v. VanPelt, 497 A.2d 1121, 1125 n.3 (Me. 1985). The privilege stated in this § 586,

> is confined to statements made by an attorney while performing his function as such. Therefore it is available only when the defamatory matter has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it. Thus the fact that the defamatory publication is an unwarranted inference from the evidence is not enough to deprive the attorney of his privilege.

Restatement (Second) of Torts § 586 (cmt. c). The privilege is interpreted broadly. Dineen v. Daughan, 381 A.2d 663, 664-65 (Me. 1978); see also Tanguay v. Asen, 1998 ME 277, ¶ 7, 722 A.2d 49, 50; Vogt v. Churchill, 687 A.2d 961, 961-62 (Me. 1997).

Here, ADA Barry was counsel for the State in the marijuana-cultivation case against Bloomquist and Attorney Nofsinger was counsel for Bloomquist. The allegedly defamatory communications occurred during the course of, and as part of, that criminal case. The statements "had some reference to" that criminal case (in the words of

12

comment c of the Restatement); they involved property of Bloomquist's.[9]  Indeed, ADA Barry was responding to a request from counsel for Bloomquist for return of the photographs of the nude woman in bondage (and other property), which were in the possession of the Sheriff's Office.[10]  Bloomquist has cited no evidence that Barry's statement ever reached the ears or eyes of anyone other than Bloomquist's counsel who, once again, initiated the communication with Barry in Nofsinger's effort to tie-up her representation in the marijuana case.  Compare Vahlsing Christina Corp. v. Stanley, 487 A.2d 264, 267 (Me. 1985).  With respect to Barry's indication to Bloomquist's attorney that the investigation was still ongoing in the fall of 2002, Bloomquist may think that the investigation into the Gibbons pictures was both opened and shut in December 2001, but he has not created a genuine dispute of fact on this score by relying on his own conjecture.   Thus, on the record before me, the statement identified by Bloomquist as underlying this defamation claim against Barry is privileged.

*Conclusion*

For the reasons explained above, I recommend that the Court **GRANT** William Barry's summary judgment as to Counts 52 of Bloomquist's complaint.

NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive

---

[9]   Barry could argue that the statement was privileged even if it were made apart from the marijuana charges and was an entirely independent investigation concerning the bondage pictures which, there is no dispute, were in Bloomquist's possession.
[10]   Notably, the three letters from his attorney on which Bloomquist so heavily relies are all tagged as being in regard to "State of Maine v. William C. Bloomquist[.] Our File No. 18053-01."

13

memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 30, 2005

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge